IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CT-3355-FL

| | |
|---|---|
| NIJEL RAMSEY LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| SERGEANT COWAN, SERGEANT ) | |
| NICHOLS, SERGEANT BROUNSON, ) | |
| and JOHN DOE CORRECTIONAL ) | |
| OFFICERS, ) | |
| ) | |
| Defendants.[1] ) | |

This matter is before the court on motion to dismiss filed by defendants sergeant Cowan, sergeant Nichols, and sergeant Brounson (collectively, "moving defendants"), which the court construes as seeking summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff responded in opposition and in this posture the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint December 27, 2023, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges excessive use of force by moving defendants during two altercations at the Maury Correctional Institution ("Maury C.I."), in violation of the Eighth Amendment. Plaintiff also brings pendent state law claims for assault and battery. Defendants sergeant Cowan ("Cowan"), sergeant Nichols ("Nichols"), sergeant Brounson ("Brounson"), and John Does were correctional

---

[1] The court constructively amends the case caption to reflect dismissal of formerly named defendants Todd Ishee, Mark Fleming, Lieutenant Holloway, and Lieutenant Dudley, Nurse Casino, and Nurse Monica Martin.

officers at the Maury C.I. during the relevant time period. As relief, plaintiff seeks compensatory and punitive damages, and various forms of injunctive relief.

Moving defendants filed the instant motion to dismiss pursuant to Rule 12(b)(6), arguing that plaintiff failed to exhaust administrative remedies prior to filing this action. In support, moving defendants rely upon: 1) declaration of Jon Gray, the associate warden at the Maury C.I.; 2) grievance logs summarizing plaintiff's grievances while housed at the Maury C.I.; 3) copies of plaintiff's administrative grievances; 4) declaration of Kimberly Grande, the executive director of the Inmate Grievance Review Board ("IGRB"); 3) additional records of grievances plaintiff submitted to the IGRB.

Plaintiff responded in opposition to the motion to dismiss, relying upon memorandum of law, his personal affidavit, and appendix of exhibits comprising the following: 1) grievances that plaintiff allegedly submitted regarding the use of force incidents; 2) Department of Adult Correction's ("DAC") administrative remedy procedure; 3) correspondence plaintiff sent to former defendant Mark Fleming and his assigned case manager.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. In May 2022, defendant Cowan approached plaintiff and asked him why he was not in his bunk at the time defendant Cowan made rounds the previous evening. (Compl. (DE 1) at 6).[2] Plaintiff and defendant Cowan then "debated" whether he violated prison rules by his absence during the nightly

---

[2] Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document. The court also notes that plaintiff's complaint is verified under penalty of perjury. (DE 1 at 21).

2

rounds. (Id. At 6–7). Defendant Nichols and another correctional officer joined the ongoing discussion. (Id. at 6). Defendant Cowan then threatened to send plaintiff to disciplinary segregation if he was not in his bunk during assigned rounds, and plaintiff responded by saying he "would have to do what I had to do." (Id. at 6–7). Defendant Nichols then pulled out his taser, pointed it at plaintiff's head, and threatened to tase him. (Id. at 7). Ultimately, plaintiff was not tased but defendant Cowan placed him in handcuffs and escorted him to segregation. (See id. at 7–8).

Upon arrival to the segregation unit, plaintiff was placed in the sergeant's office, where he remained handcuffed. (See id. at 8). There, defendant Cowan, defendant Brounson, and the four John Doe defendants "began to punch [plaintiff] in [his] back and stomach and slap [him] in [the] face as they sarcastically began to ask [plaintiff] if [he] thought [he] was tough or could do what [he] wanted to do." (Id.). These defendants then proceeded to remove plaintiff's handcuffs and "dared" him to try to fight back, but plaintiff refused to do so. (Id.). Plaintiff was then placed in a holding cell without further incident. (See id. at 8–9). As a result of the assault, plaintiff suffered significant injuries to his neck, arms, hips, and lower back. (Id. at 10).

## COURT'S DISCUSSION

A.  Standard of Review

The court construes moving defendants' motion as seeking summary judgment where matters outside the pleadings were submitted and the court relies upon same herein. See Fed. R. Civ. P. 12(d).[3] Summary judgment is appropriate where "the movant shows that there is no

---

[3] The court provided plaintiff notice that the instant motion may be construed as seeking summary judgment, (DE 25), and plaintiff responded by submitting his personal affidavit and other documentary evidence (DE 28, 30). Plaintiff did not request discovery prior to resolving the administrative exhaustion defense, and there is no indication that the summary judgment record provided herein is deficient. See Pledger v. Lynch, 5 F.4th 511, 526 (4th Cir.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[4]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable

---

2021).

[4] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B. Analysis

As noted, moving defendants raises the affirmative defense that plaintiff failed to exhaust administrative remedies. The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84 (2006). A prisoner must exhaust administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). Administrative grievances must contain sufficient detail to "alert[] the prison to the nature of the wrong for which redress is sought" and "give prison officials a fair opportunity to address the alleged [mistreatment]." Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017); Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008).

Administrative exhaustion is "defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007). And the PLRA mandates "proper exhaustion" meaning "untimely or otherwise procedurally defective administrative grievance[s]

or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement. Woodford, 548 U.S. at 83, 90. Thus, an inmate has not exhausted administrative remedies unless he receives a decision "on the merits" of his grievance and complies with all procedural requirements for appealing the result. See id. at 90.

The DAC's administrative remedy procedure ("ARP") prescribes a three-step procedure that inmates must complete to exhaust administrative remedies. (See ARP (DE 30-2) § 0310); see also Moore, 517 F.3d at 721 (describing policy). The ARP first encourages inmates to attempt informal communication with responsible authorities at the facility in which the problem arose. (ARP (DE 30-2) § 0301(a)). If informal resolution is unsuccessful, the ARP provides the inmate may file a written grievance on form DC-410 ("step one"). (Id. §§ 0304(a), 0310(a)). If the inmate is not satisfied with the decision reached at the step-one level, he may request relief from the facility head ("step two"). (Id. § 0310(b)(1)). If the inmate is not satisfied with the decision reached by the facility head, he may appeal to the Secretary of DAC through the inmate grievance examiner ("step three"). (Id. § 0310(c)). The decision by the Inmate Grievance Examiner or a modification by the Secretary of DAC shall constitute the final step of the procedure. (Id. § 0310(c)(6)).

Several of the ARP's procedural requirements are pertinent here. Inmates must file step-one grievances within 90 days of the incident giving rise to the complaint. (Id. § 0306(c)(2)). The ARP also provides that "within three days after submission of the grievance, the inmate who submits the grievance will be notified of acceptance or rejection [for procedural reasons] in writing upon the appropriate form." (Id. at § 0307(b)).

Here, plaintiff acknowledges that he did not exhaust administrative remedies as to the

6

excessive force incident. (See Pl's Mem. (DE 29) at 2, 4–6). But plaintiff argues that he submitted various grievances related to the incident that prison officials refused to process, thereby rendering the ARP unavailable in this instance.

Under the PLRA, inmates must exhaust only "available" administrative remedies. See 42 U.S.C. § 1997e(a); Ross v. Blake, 578 U.S. 632, 642–44 (2016). An administrative remedy procedure is unavailable if the "procedure's provided avenues for recourse are not meaningfully 'capable of use to obtain some relief for the actions complained of.'" Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022) (quoting Ross, 578 U.S. at 642–43). The Supreme Court has identified three illustrative circumstances where an administrative remedy procedure is not capable of use to obtain relief: 1) where the procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when it is "so opaque that it becomes, practically speaking, incapable of use"; and 3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. at 642–44; Griffin, 56 F.4th at 335.

Plaintiff has not provided evidence indicating the ARP was unavailable for several independent reasons. The court begins with plaintiff's assertions that he attempted to file a grievance the day the assault occurred, but officials failed to process this grievance. (Pl's Aff. (DE 28) at 5–6). In support of this assertion, plaintiff offers "exhibit A" from his appendix, noting that this is the grievance that plaintiff "filed on or about May 4, 2022" (hereinafter, "assault grievance"). (Assault Grievance (DE 30-1); see also Pl's App. (DE 30) at 1 (providing date of filing); Pl's Aff. (DE 28) at 5–6). But it cannot be correct that plaintiff filed this grievance on May 4, 2022, where the top of the form shows that plaintiff wrote the grievances on the 2023

7

version of the form. (Assault Grievance (DE 30-1) at 1–7 (showing "DC-410 (Rev. 01/23)" as the version of the form); compare Pl's App. Ex. C (showing form revision date of 07/15 for other grievances); Gray Decl. Ex. B (DE 24-1) at 7–12 (same)). In these circumstances, no reasonable juror could believe that the assault grievance was drafted and filed with prison officials May 4, 2022, given that the form plaintiff offers was not created until 2023. See Scott v. Harris, 550 U.S. 372, 380–81 (2007); Witt v. W. Va. State Police, 633 F.3d 272, 276–77 (4th Cir. 2011) (explaining that self-serving testimony in affidavit may be disregarded if "documentary evidence blatantly contradicts [it] so that no reasonable jury could believe it").

Even assuming, however, that the court should read plaintiff's submissions as suggesting that the assault grievance is a later-produced replica of the grievance that was filed, contrary to plaintiff's own statements, (DE 30 at 1), this one unresolved grievance is insufficient to create a genuine dispute of material fact regarding availability of the ARP. This is because plaintiff submitted numerous grievances throughout the time period before and after the assault that prison officials accepted for filing and processed in accordance with the ARP's procedures. (See Grande Decl. (DE 24-2) at 2–3; id. Exs. 1-10 (DE 24-2) at 4–53); Moss v. Harwood, 19 F.4th 614, 622 (4th Cir. 2021) (concluding in the specific context presented that "evidence of access to the grievance system conclusively refutes [plaintiff's] allegation that the . . . administrative remedies were not available to him").

Thus, if plaintiff indeed filed the assault grievance and did not receive notice within three days that the grievance was accepted, then he would have been on notice that the grievance did not make its way to the pertinent screening officer. (See ARP (DE 30-2) § 0307(b)). But plaintiff took no action to refile the grievance using the standard ARP procedure after this date,

despite the fact that the vast majority of the 90-day time limit remained available to him. (See Pl's Aff. (DE 28); ARP (DE 30-2) § 0306(c)(2)). Where prison officials accepted for filing and processed numerous other grievances from plaintiff during the pertinent timeframe, this one instance of a missing grievance does not show that the ARP was unavailable to him. See Moss, 19 F.4th at 622.

Plaintiff counters that prison officials refused to process the assault grievance due to allegations of serious staff misconduct raised therein. But plaintiff also avers that his family contacted prison officials to report the assault, and that same day lieutenant Holloway took plaintiff's verbal statement regarding the assault, placed him in a segregation cell, and directed him to write an incident report. (Pl's Aff. (DE 28) at 5). Thus, the assault was documented in prison records around the same time that plaintiff filed the assault grievance, establishing that prison officials were not trying to cover up the assault. (See id.).

Moreover, plaintiff filed at least one grievance during this same time period complaining that a prison official attempted to provoke a fight with plaintiff, while stating that he wanted "an excuse to beat [plaintiff's expletive]." (Grande Decl. (DE 24-2) at 9). This grievance was processed through all levels of the ARP, (see id. at 8–13), and plaintiff offers no explanation for why officials would process this complaint of serious staff misconduct while refusing to process the assault grievance concerning matters already known to prison officials. Accordingly, the fact that officials investigated the assault on plaintiff and processed other grievances concerning staff misconduct indicates that the ARP remained available to plaintiff to refile the assault grievance even assuming the first one was mishandled or otherwise destroyed. See Moss, 19 F.4th at 622.

Finally, plaintiff notes that he attempted to file an emergency grievance and two letters

9

regarding a separate incident in which defendant Brounson threatened plaintiff and he did not receive a response to same. (Pl's Aff. (DE 28) at 7; Pl's App. Exs. C, D, E (DE 30-3, 30-4, 30-5)). But plaintiff did not provide any details regarding the use of force incident in these filings, and thus they could not serve to place prison officials on notice that plaintiff was attempting to file a grievance about excessive use of force. (See Pl's App. Exs. C, D, E. (DE 30-3, 30-4, 30-5)); Wilcox, 877 F.3d at 167 n.4 (explaining administrative grievances must provide sufficient detail to "alert[] the prison to the nature of the wrong for which redress is sought" and "give prison officials a fair opportunity to address the alleged [mistreatment]").

To the extent plaintiff argues that prison officials' alleged failure to respond to his emergency grievance and the letters is evidence that the ARP was unavailable to him, this argument also is without merit. The letters were not filed on the correct form for submitting grievances, and thus any failure to respond to same does not show that the ARP was unavailable to plaintiff. (Pl's App. Exs. D, E (DE 30-4, 30-5); ARP (DE 30-2) § .0304(a)); see Woodford, 548 U.S. at 83, 90 (stating the PLRA requires "proper exhaustion" and thus "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement.).

As to the emergency grievance, plaintiff attests that he sent it to the commissioner of prisons. (Pl's Aff. (DE 28) at 7). But the ARP provides that emergency grievances must be sent to the warden in the first instance, and not the commissioner of prisons. (ARP (DE 30-2) § 0308(a)). Thus, the failure to respond to one procedurally defective grievance does not show that the standard ARP channels were unavailable to plaintiff, especially when considered against the evidence recited above showing that the procedure remained available and that prison officials

10

in fact investigated his allegations of excessive use of force. (See Pl's Aff. (DE 28) at 5 (discussing investigation); Grande Decl. (DE 24-2) at 2–3; id. Exs. 1-10 (DE 24-2) at 4–53) (showing plaintiff filed and exhausted numerous grievances during the same time period). Accordingly, moving defendants are entitled to judgment as a matter of law where plaintiff failed to exhaust available administrative remedies under the PLRA.

C.      John Doe Defendants

As of the date hereof, plaintiff has not identified the John Doe defendants named in the complaint, and as a result these defendants did not join the instant motion for summary judgment. However, moving defendants' successful defense that plaintiff failed to exhaust administrative remedies inures to the benefit of the John Doe defendants. U.S. ex rel. Hudson v. Peerless Ins. Co., 374 F.2d 942, 945 (4th Cir. 1967) ("Where the liability is joint and several or closely interrelated and a defending party establishes that plaintiff has no cause of action or present right of recovery, this defense generally inures also to the benefit of [any non-moving] defendant."). For the reasons set forth above, plaintiff did not exhaust administrative remedies as to the excessive force claim alleged against both the moving defendants and the John Doe defendants. Accordingly, the exhaustion defense precludes plaintiff's claims against the John Doe defendants, and the court dismisses the claims asserted against them without prejudice. See Hudson, 374 F.2d at 945.

## CONCLUSION

Based on the foregoing, moving defendants' motion to dismiss, construed as a motion for summary judgment, (DE 22), is GRANTED. Plaintiff's claims against all defendants are

11

dismissed without prejudice. The clerk is DIRECTED to close this case.

SO ORDERED, this the 10th day of September, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge